### HANOVER FIRE INS. CO. v. BRADFORD.

(Circuit Court, W. D. Pennsylvania. August 12, 1899.)

1. PRINCIPAL AND AGENT—ACTS OF AGENT BINDING ON PRINCIPAL.

Where a duly-appointed agent of an insurance company employed a clerk, who was habitually permitted by the agent to solicit insurance, collect premiums, and deliver policies, such clerk, in these matters, was thus made by the agent so far the representative of the company that his delivery of a policy in the regular course of business had the same effect to bind the company as if it had been delivered by the agent himself.

2. SAME—LIABILITY OF PRINCIPAL FOR TORTS OF AGENT.

Such clerk, without the consent or knowledge of the agent, countersigned the latter's name to a policy for a prohibited risk, and delivered the same in the regular course of business. A loss having occurred, the company was sued by the insured, and compelled to pay the loss. In an

action by the company against its said agent for reimbursement, *held*, that the defendant was responsible for the act of the clerk, his own sub-agent, in issuing the policy in violation of instructions given by the company to the defendant.

## At Law.

In pursuance of a stipulation in writing waiving a jury, this cause was tried by the court without the intervention of a jury on the 28th and 29th days of June, 1899; and now, August 12, 1899, upon due consideration, the court finds the facts to be as follows:

(1) By an instrument dated April 20, 1887, the defendant was appointed and constituted the agent of the plaintiff company, with authority to receive proposals for insurance against loss and damage by fire in New Brighton, Pa., and vicinity, to fix rates of premium, to receive moneys, and to counter-sign, issue, and renew policies of insurance, signed by the president and attested by the secretary of the plaintiff company, subject to the rules and regulations of said company and such instructions as might from time to time be given by its officers. The defendant immediately accepted this appointment, and thereafter acted thereunder as the plaintiff's agent.

(2) The defendant maintained an office at New Brighton, Pa., for the conduct of the insurance business, he being agent for several insurance companies, and in the prosecution of said business the defendant had in his employment one H. N. W. Hoyt, who not only did all the clerical work of said office, but also made daily reports of business to the plaintiff's general agents for the state of Pennsylvania at Wilkesbarre, and further; in the regular course of business and with the defendant's knowledge and by his authority, solicited insurance, collected premiums, and from time to time delivered policies of insurance to the persons insured.

(3) The Mayer pottery works, situate in Beaver Falls, Pa.. in the vicinity of New Brighton, had been insured by policies aggregating the sum of $15,-000, issued by companies other than the plaintiff company, and these policies the insured had procured through the defendant as the representative of the companies. Shortly before July 1, 1896, Joseph Mayer, one of the proprietors of those works, addressed a letter to the defendant at New Brighton, calling his attention to the fact that these policies would expire on the last-mentioned date, and desiring information whether he (the defendant) would continue the insurance in companies represented by him. In response to this letter the said H. N. W. Hoyt visited said Mayer, and informed him that the policies would be renewed; and on July 1, 1896, said Hoyt, acting on behalf of the defendant. brought to said Mayer and delivered to him six policies of insurance, amounting together to $15.000, against loss by fire upon the said pottery works and the contents thereof. One of the policies of insurance so delivered by said Hoyt to said Mayer was policy No. 307,782 of the Hanover Fire Insurance Company (the plaintiff company), dated July 1, 1896, signed by the president and attested by the secretary of the company, and purporting to be countersigned by Thomas Bradford, the defendant, as agent of the company. whereby, in consideration of the premium of $37.50, that company insured J. & E. Mayer and the Mayer Pottery Company, Limited, for the term of one year from July 1, 1896, against loss by fire to an amount not exceeding $2.500 to the Mayer pottery works, to wit, the pottery buildings and the contents of the same.

· (4) On the 8th day of July, 1896. the insured mailed a check for $225, the amount of the premiums on said six policies. payable to the order of Thomas Bradford, in a letter addressed to him at New Brighton. On July 11, 1896, this check, indorsed by said Hoyt thus: "For the credit of Thomas Bradford, Agent,"—was deposited by Hoyt in the defendant's bank. to the credit of the defendant as agent. in his bank account as agent. The check was paid by the drawer to the bank.

(5) Such risks as that covered by said policy No. 307.782 on July 1, 1896. were and long had been prohibited by the plaintiff company, and the defendant knew of this prohibition. Long before July 1, 1896, the defendant had received instructions from the plaintiff company, through its proper officers, not to insure potteries. · ··

(6) Said policy No. 307,782 was not countersigned by the defendant personally, but said Hoyt countersigned the policy for and in the name of the defendant, by writing the defendant's name at the proper place. This he did without authority from the defendant, and without the defendant's knowledge. Hoyt delivered said policy to Mayer without the defendant's consent or knowledge. The defendant had no knowledge that this policy had been issued until after the fire and loss hereinafter to be mentioned.

(7) The issuing of said policy No. 307,782 to J. & E. Mayer and the Mayer Pottery Company, Limited, was not reported to the plaintiff company, and the plaintiff had no knowledge whatever of the transaction until after the fire and loss had occurred.

(8) On October 21, 1896, the said insured property of J. & E. Mayer and the Mayer Pottery Company, Limited, was destroyed by fire.

(9) Afterwards suit was brought in the court of common pleas of Beaver county, Pa., at No. 224 of March term, 1897, by J. & E. Mayer and the Mayer Pottery Company, Limited, against the Hanover Fire Insurance Company (the plaintiff here), upon the said policy of insurance No. 307,782. On January 28, 1898, upon trial by jury, a verdict therein was rendered in favor of the plaintiffs in the sum of $2,529.20. and on February 8, 1898, judgment was entered on the verdict against the defendant therein in the sum of $2,529.20 and costs, $43.16. On February 10, 1898. the defendant therein paid to the plaintiffs therein the amount of the judgment and costs, namely $2,572.36.

(10) Thomas Bradford, the defendant here, was not notified by the Hanover Fire Insurance Company to defend the said suit against the company upon the policy No. 307,782; but at the trial of that action he was called as a witness for the defense, and testified.

Upon these facts the court determines the law of the case to be as expressed in the following opinion.

A. S. & W. S. Moore and Hice & Hice, for plaintiff.

Joseph M. Swearingen and John M. Buchanan, for defendant.

ACHESON, Circuit Judge. As this defendant was not notified to defend the action brought in the court of common pleas against the Hanover Fire Insurance Company on the policy of insurance, he was not concluded by the judgment there, and it was open to him here to show that the insurance company was not liable upon the policy. He has not, however, succeeded in doing this. The evidence establishes that Hoyt was much more than a mere clerk. In fact, he was the defendant's subagent in the prosecution of the business of the Hanover Fire Insurance Company, the defendant's principal. Hoyt was authorized by the defendant to solicit insurance, to collect premiums, and to deliver policies, and these things he habitually did in the regular course of his employment. Thus the defendant made Hoyt the representative of the insurance company in the transaction of July 1, 1896. In delivering the Hanover policy of insurance on the Mayer pottery works, Hoyt was apparently acting with the scope of his authority. Under the circumstances the delivery of the policy by Hoyt had the same effect to bind the company as if it had been done by the defendant himself. These views are well supported by the authorities. Insurance Co. v. Eshelman, 30 Ohio St. 647, 657; Bodine v. Insurance Co., 51 N. Y. 117; Swan v. Insurance Co., 96 Pa. St. 37, 41, 42; McGonigle v. Insurance Co., 168 Pa. St. 1, 31 Atl. 875.

The risk was a prohibited one, within the defendant's knowledge. It was taken in violation of the instructions he had received from

his principal. In consequence, his principal has sustained injury. Who shall bear the loss? Now, even if the defendant be blameless personally, his employé is at fault. I cannot see, then, how the defendant can escape responsibilty for the hurtful act of his own agent, done within the apparent limits of his employment. I feel constrained to hold that the defendant's case falls within the general rule that the principal is responsible civiliter to third persons for the acts—even the tortious acts—of his agent, if done in the course of the agent's employment, although the principal did not authorize the acts, or, indeed, may have forbidden them. Railroad Co. v. Derby, 14 How. 468, 480, 14 L. Ed. 468. The application of this rule to the case in hand may be placed upon the ground that, where one of two innocent persons must suffer from the wrongful act of a third person, the loss should be borne by him who put the wrongdoer in a position of trust and confidence, and thus enabled him to perpetrate the wrong. Accordingly, upon the facts and law of the case as above stated, the court finds in favor of the plaintiff, and assesses its damages at $2,803.87.